1   R. REX PARRIS (SBN 96567)
    rrex@parris.com
2   KITTY K. SZETO (SBN 258136)
    kitty@parris.com
3   JOHN M. BICKFORD (SBN 280929)
    jbickford@parris.com
4   **PARRIS LAW FIRM**
    43364 10th Street West
5   Lancaster, California 93534
    Telephone:  (661) 949-2595
6   Facsimile:   (661) 949-7524

7   Attorneys for Plaintiffs and the Putative Classes

8

9                      **UNITED STATES DISTRICT COURT**

10                    **CENTRAL DISTRICT OF CALIFORNIA**

11   KAMELA WOODINGS and JODI          Case No. 2:20-cv-07072-MCS-JEM
     DORMAIER, on behalf of themselves
12   and all members of the putative class,   **PLAINTIFFS' NOTICE OF MOTION
                                               AND MOTION FOR PRELIMINARY
13                     Plaintiffs,             APPROVAL OF CLASS ACTION
                                               SETTLEMENT**
14           v.
                                          [Filed Concurrently with Declaration of
15   FREEDOMROADS, LLC d/b/a            Kitty K. Szeto; and [Proposed] Order]
     CAMPING WORLD, a Minnesota
16   Limited Liability Corporation, and    Judge:    Hon. Mark C. Scarsi
     DOES 1 through 100,                   Crtrm.:   7C
17                                         Date:     August 23, 2021
                       Defendant.          Time:     9:00 a.m.
18
                                          Complaint Filed: June 25, 2020
19                                        Trial Date: None

20

21

22

23

24

25

26

27

28

**TO THE HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on **August 23, 2021** at **9:00 a.m.**, or as soon as this matter may be heard before the Honorable Mark C. Scarsi in Courtroom 7C of the United States District Court for the Central District of California located at 350 West 1st Street, Courtroom 7C, 7th Floor, Los Angeles, California 90012, Plaintiffs Kamela Woodings and Jodi Dormaier (collectively, "Plaintiffs") will and hereby move the Court for an order:

- Granting preliminary approval of the proposed all-in, non-reversionary **$3,950,000.00** class action settlement as described herein and as set forth in the parties' Class and PAGA Action Settlement Agreement and Release ("Settlement Agreement") attached as **Exhibit "1"** to the Declaration of Kitty K. Szeto filed concurrently herewith ("Szeto Decl.");

- Granting preliminary approval of the Settlement Agreement as to the California and Washington Classes, and the PAGA Action;

- Conditionally Certifying the California and Washington Classes for settlement purposes;

- Preliminarily appointing and approving Parris Law Firm as Counsel for the California and Washington Classes;

- Preliminary appointing and approving Plaintiff Kamela Woodings as Class Representative for the California Class, and Plaintiff Jodi Dormaier for the Washington Class;

- Approving the Notice of Class Action and Private Attorney General Act Settlement ("Notice") attached as **Exhibit "A"** to the Settlement Agreement;

- Appointing Simpluris, Inc. as the Third-Party Administrator ("TPA") and preliminarily approving settlement administration costs in the amount of **$11,000.00**;

- Directing the TPA to mail the Notice to the Settlement Class, and all other

1

responsibilities outlined in the Settlement Agreement;

- Preliminarily approving Class Counsel's request for attorneys' fees in the amount of **$1,382,500.00**;

- Preliminarily approving Class Counsel's request for reimbursement of litigation costs and expenses not to exceed **$15,000.00**;

- Preliminarily approving **$15,000.00** Enhancement Awards to Class Representatives Kamela Woodings and Jodi Dormaier; and

- Scheduling a hearing on **November 29, 2021** to consider final approval of the proposed settlement.

This motion follows after the conference of Counsel under Local Rule 7-3, which started in September 2020, and is based on the following memorandum of points and authorities; the Declarations of Kitty K. Szeto, Kamela Woodings, and Jodi Dormaier in support thereof; the [Proposed] Order lodged together with this motion, as well as upon the pleadings and other records on file with the Court in this matter, and upon such documentary evidence and oral argument as may be presented at or before the hearing on this motion.

DATED:  July 26, 2021                    **PARRIS LAW FIRM**

By: /s/ Kitty K. Szeto
Kitty K. Szeto
Attorneys for Plaintiff and the
Putative Classes

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

# TABLE OF CONTENTS

PAGE(S)

TABLE OF AUTHORITIES ........................................................................ iii

MEMORANDUM OF POINTS AND AUTHORITIES ......................................... 1

I.    INTRODUCTION. ........................................................................ 1

II.   PROCEDRUAL BACKGROUND. .................................................. 1

      A.    Plaintiffs' Allegations. ....................................................... 1

      B.    Settlement. ......................................................................... 4

III.  LEGAL ANALYSIS. ....................................................................... 5

      A.    Legal Standard for Preliminary Approval of Class Action
            Settlements. ....................................................................... 5

            1.    The Strength of the Case and Associated Risks Favor
                  Preliminary Approval of the Settlement. ..................... 6

            2.    The Settlement Resulted from Arm's Length Negotiations
                  Based Upon Investigation and Discovery. ................... 7

            3.    The Settlement Amount is Fair, Reasonable, and  Adequate. 7

      B.    The Proposed Settlement Classes Satisfy the Elements for Class
            Certification. ................................................................... 13

            1.    Numerosity ............................................................... 13

            2.    Ascertainability. ....................................................... 13

            3.    Typicality. ................................................................ 14

            4.    Commonality. ............................................................ 14

            5.    Adequacy. ................................................................. 15

            6.    Common Question of Law and Fact Predominate ........... 15

            7.    Superiority of Class Action ......................................... 16

      C.    Legal Standard For Attorneys' Fees In A Class Action
            Settlement. ..................................................................... 16

i

# TABLE OF CONTENTS

PAGE(S)

1.    Upward Adjustment of the Ninth Circuit Benchmark is
      Appropriate. .......................................................................... 18
      A.    *The Risks Assumed by Plaintiffs' Counsel*. ................. 19
      B.    *Counsel Obtained an Excellent Result for the Classes*.20
      C.    *Plaintiffs' Counsel's Award is Relatively Modest*........ 20
      D.    *Counsel Obtained Swift and Efficient Relief for the*
            *Classes*. .................................................................... 21
      E.    *The Skill and Reputation of Plaintiffs' Counsel Justifies*
            *the Fee Requested*. ....................................................... 21

C.    **Costs to Be Reimbursed to Plaintiffs' Counsel.** .......................... 22

D.    **The Proposed Notice is Adequate.** ................................................. 22

E.    **Appointing Simpluris, Inc. as the Third Party Administrator.**.. 23

F.    **The Enhancement Award Is Fair and Reasonable.**.................... 23

**CONCLUSION**.......................................................................................... 25

ii

# TABLE OF AUTHORITIES

**PAGE(S)**

<u>**Cases**</u>

*Abdullah v. U.S. Sec. Assocs., Inc.,*
  *731 F.3d 952 (9th Cir. 2013)* ................................................................... 16

*Acosta v. Trans Union,*
  243 F.R.D. 377 (C.D. Cal. 2007)............................................................. 6

*Allapattah Services, Inc. v. Exxon Corp.,*
  454 F.Supp. 2d 1185  (S.D.Fla. 2006).................................................... 18

*Armstrong v. Whirlpool Corp.,*
  2007 U.S. Dist. LEXIS 14635 (M.D. Tenn. 2007)................................. 20

*Blum v. Stenson,*
  465 U.S. 886 (1984)................................................................................ 17

*Boeing Co. v. Van Gemert,*
  444 U.S. 472 (1980)........................................................................ 17, 18

*Boring v. Bed Bath & Beyond of California Ltd. Liab. Co.,*
  No. 12-CV-05259-JST, 2014 WL 2967474 (N.D. Cal. June 30, 2014)............... 25

*Brinker Restaurant Corp. v. Superior Court*
  (2012) 53 Cal.4th 1004 ............................................................... 9, 15, 16

*Brotherton v. Cleveland,*
  141 F.Supp.2d 907  (S.D.Ohio 2001) ..................................................... 25

*Cartt v. Superior Court*
  (1975) 50 Cal.App.3d 960 ...................................................................... 22

*Dolgow v. Anderson,*
  43 F.R.D. 472 (E.D.N.Y. 1968)............................................................. 17

*Eddings v. Health Net, Inc.,*
  No. CV 10-1744-JST RZX, 2013 WL 3013867 (C.D. Cal. June 13, 2013) ........ 25

iii

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**PAGE(S)**

<u>**Cases**</u>

*Faulkinbury v. Boyd & Associates, Inc.*
(2013) 216 Cal.App.4th 220 ................................................................. 9

*Ghory v. Al-Lahham*
209 Cal.App.3d 1487 (1989) .............................................................. 10

*Glass v. UBS Financial Services, Inc.*,
2007 WL 221862 (N.D. Cal. Jan. 26, 2007)………………………………..18

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ................................................. 14, 16, 20

*Harris v. Palm Springs Alpine Estates, Inc.*,
329 F.2d 909 (9th Cir. 1964) .............................................................. 14

*Holman v. Experian Info. Solutions, Inc.*,
No. 11-CV-0180 CW (DMR), 2014 WL 7186207 (N.D. Cal. Dec. 12, 2014).... 25

*In re Activision Securities Litigation*,
723 F. Supp. 1373 (N.D. Cal. 1989)................................................... 17

*In re American Bank Note Holographies, Inc., Securities Litigation*
(S.D.N.Y. 2001) 127 F.Supp.2d 418, 429–30 ................................... 11

*In re Interpublic Sec. Litig.*,
2004 U.S. Dist. LEXIS 21429 (S.D.N.Y. Oct. 27, 2004) ........................... 17, 18

*In re KeySpan Corp. Sec. Litig.*,
No. CV 2001-5852 (ARR) (MDG), 2005 U.S. Dist. LEXIS 29068 (E.D.N.Y. Aug. 25, 2005) ........................................................................ 20

*In re Pacific Enterprises Security Litigation*,
47 F.3d 37 (9th Cir. 1995) ................................................................. 17

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

# TABLE OF AUTHORITIES

**PAGE(S)**

## Cases

*In Re Southern Ohio Correctional Facility*,
  175 F.R.D. 270 (S.D. Ohio 1997)........................................................................ 24

*In re Taco Bell Wage and Hour Actions*,
  No. 1:07cv1314 LJO DLB, 2012 WL 5932833 (E.D.Cal. 2012) ........................ 15

*In re United Energy Corp. Solar Power Modules Tax Shelter Invs. Sec. Litig.*,
  122 F.R.D. 251 (C.D. Cal. 1988)........................................................................ 14

*In re Washington Public Power*,
  19 F.3d at 1302……………………………………...............................................19, 21

*Ingram v. The Coca-Cola Co.*,
  200 F.R.D. 685 (N.D. Ga. 2001) ........................................................................ 24

*Jimenez v. Allstate Ins. Co.*,
  765 F.3d 1161 (9th Cir. 2014) .............................................................................. 9

*Kileigh Carrington v. Starbucks Corporation, et al.*,
  San Diego Superior Court Case No. 37-2014-00018637-CU-OE-CTL (Apr. 3,
  2017) ................................................................................................................... 11

*Lerwill v. Inflight Motion Pictures, Inc.*,
  582 F.2d 507 (9th Cir. 1978) .............................................................................. 15

*Levya v. Medline Indus., Inc.*
  716 F.3d 510 (9th Cir. 2013) .............................................................................. 16

*Linney v. Cellular Alaska P'ship*,
  151 F.3d 1234 (9th Cir. 1998) .............................................................................. 6

*Marin v. Costco Wholesale Corp.*
  (2008) 169 Cal.App.4th 804 ................................................................................. 8

*Mendoza v. United States*
  (9th Cir. 1980) 623 F.2d 1338 ............................................................................ 23

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT

# TABLE OF AUTHORITIES

**PAGE(S)**

<u>**Cases**</u>

*Mills v. Electric Auto-Lite Co.*,
   396 U.S. 375 (1970)...................................................................... 17

*Murphy v. Kenneth Cole Productions, Inc.*,
   40 Cal.4th 1094 (2007) ................................................................ 10

*Officers for Justice*,
   688 F.2d at 625 ........................................................................... 13

*Paul, Johnson, Alston & Hunt v. Graulty*,
   886 F.2d 268 (9th Cir. 1989) .................................................. 17, 19

*Razilov v. Nationwide Mut. Ins. Co.*,
   No. 01-CV-1466-BR, 2006 WL 3312024 (D. Or. Nov. 13, 2006) ..................... 25

*Rodriguez v. West Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ....................................................... 6

*Singer v. Becton Dickinson and Co.*,
   08-cv-821-IEG (BLM), 2010 WL 2196104 (S.D. Cal. June 1, 2010) ................ 25

*Six Mexican Workers v. Arizona Citrus Growers*,
   904 F.2d 1301 (9th Cir. 1990) .............................................. 16, 17, 18

*Smith v. CRST Van Expedited, Inc.*,
   No. 10-CV-1116- IEG WMC, 2013 WL 163293 (S.D. Cal. Jan. 14, 2013)........ 25

*Util. Reform Project v. Bonneville Power Admin.*,
   869 F.2d 437 (9th Cir. 1989) ....................................................... 13

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002) ...................................... 16, 19, 20, 21

*Vranken v. Atlantic Richfield Co.*,
   901 F.Supp. 294 (N.D. Cal. 1995)............................................. 24, 25

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

# TABLE OF AUTHORITIES

**PAGE(S)**

**Cases**

*Wal-Mart Stores, Inc. v. Dukes,*
    *564 U.S. 338, 361 (2011)* ..................................................................... 16

*Wang v. Chinese Daily News, Inc.,*
    737 F.3d 538 (9th Cir. 2013)............................................................... 16

*Williams v. MGM-Pathe Communications,*
    129 F.3d 1026 (9th Cir. 1997) ........................................................... 18

*Young v. Polo Retail, LLC,*
    2007 WL 951821 (N.D. Cal. 2007) .................................................... 18

*Zator v. Sprint/United Management Co.*
    (S.D.Cal. Mar. 29, 2011, No 09-cv-0935-LAB(MDD)) 2011 WL 1157527 ......... 8


**Statutes**

29 U.S.C. § 207(e) .................................................................................. 8

Cal. Civ. Code § 1781 ........................................................................... 22

Labor Code § 226................................................................................... 10

Labor Code § 2699.5, subd. (f)(2) ........................................................ 10

Labor Code, § 203................................................................................... 10

Labor Code, § 510, subd. (a)................................................................. 8

Wash. Rev. Code § 49.12.020................................................................ 3, 9

Wash. Rev. Code § 49.46.090................................................................ 9

Wash. Rev. Code § 49.46.130................................................................ 3, 9


**Other Authorities**

*Manual for Complex Litigation* § 21.311 at p. 413 (4th ed. 2007)................................ 23

*4 Newberg on Class Actions* at § 11.26…………………………………....……………13, 23

## TABLE OF AUTHORITIES

**PAGE(S)**

**<u>Rules</u>**

29 C.F.R. § 778.211 (c) ........................................................................................... 9

Fed. R. Civ. P. 23(a)(1) .......................................................................................... 13

Fed. R. Civ. P. 23(a)(2) .......................................................................................... 14

Fed. R. Civ. P. 23(c)(2) .......................................................................................... 23

Fed. R. Civ. P. 23(e) ......................................................................................... 5, 23

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION.

Plaintiffs Kamela Woodings and Jodi Dormaier (collectively, "Plaintiffs") seek preliminary approval of a multi-million dollar all-in, non-reversionary class action settlement fund for approximately 1,322 settlement class members and Private Attorney General Act ("PAGA") releases (collectively "the Class").  Subject to court approval, Defendant FreedomRoads, LLC ("Defendant" or "FreedomRoads") has agreed to pay a total maximum settlement fund of **$3,950,000.00** ("Gross Settlement Amount") in exchange for a release of the claims defined in the Class and PAGA Action Settlement Agreement and Release ("the Settlement").[1]  After deducting payment of attorneys' fees ($1,382,500.00) and costs (not to exceed $15,000.00) to Class Counsel, the costs of settlement administration ($11,000.00), a PAGA Payment of $900,000.00, and Service Awards to Class Representatives Kamela Woodings and Jodi Dormaier ($15,000.00 each), a Net Settlement Amount of approximately $1,611,500.00 will be automatically paid out to Settlement Class Members without the need to submit a claim form, equating to roughly $1,218.99 per class member before taxes.[2]

As will be demonstrated herein, the **$3,950,000.00** Settlement is fair, reasonable, and adequate and the Court should grant preliminary approval.

## II.  PROCEDRUAL BACKGROUND.

### A.  Plaintiffs' Allegations.

On May 28, 2020, Plaintiff Woodings filed a Private Attorney General Act of 2004 complaint in the Superior Court of the State of California, for the County of Los Angeles, Case No. 20STCV20261,  in which she alleged that she often performed off-the-clock work for which she was not adequately compensated, and alleged the following causes of

---

[1]  The Settlement Agreement is attached as **Exhibit 1** to the accompanying Declaration of Kitty K. Szeto In Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement ("Szeto Decl."), Ex. "1."

[2]  $1,611,500.00 divided by 1,322 Settlement Class Members.

actions: (1) Violation of California Labor Code sections 2698, *et seq.* (Private Attorney General Act of 2004), which includes allegations of (a) Failure to Pay Minimum Wage, (b) Failure to Pay Overtime, (c) Failure to Provide Meal Periods, (d) Failure to Provide Rest Breaks, (e) Failure to Timely Pay Wages Upon Termination, (f) Failure to Timely Pay Wages During Employment, (g) Failure to Provide Complete and Accurate Wage Statements, and (h) Failure to Keep Accurate Business Records (hereinafter, "PAGA Complaint").

On June 25, 2020, Plaintiff Woodings filed a class action complaint in the Superior Court of the State of California, for the County of Los Angeles, Case No. 20STCV24159, in which she alleged that she was not appropriately compensated for all wages earned in the form of commission, and that she often performed off-the-clock work for which she was not adequately compensated. Woodings also alleged the following causes of actions: (1) Violation of California Labor Code §§ 1194, 1197, an 1197.1 (Unpaid Minimum Wages); (2) §§ 1198 (Unpaid Overtime); (3) § 226.7 (Unpaid Meal Period Premiums); (4) § 226.7 (Unpaid Rest Period Premiums); (5) §§ 201 and 202 (Final Wages Not Timely Paid); (6) § 226(a) (Non-Compliant Wage Statements); (7) Fraud; (8) Negligent Misrepresentation; (9) Breach of Contract; (10) Accounting; and (11) Violation of California Business & Professions Code §§ 17200, et *seq.* premised on the same Labor Code provisions.

While working for Defendant, Plaintiffs were to be paid an hourly rate plus a sales commission of 20% of the "Gross Profit" per each RV they sold. However, as alleged by Plaintiffs, Defendant breached this written compensation agreement by fraudulently manipulating and lowering the "Gross Profit" on each RV sold, thereby reducing the amount of sales commission paid to Plaintiffs and the putative class members. Moreover, their commissions were not factored into the regular rate of pay. Additionally, Defendant failed to pay them for all hours worked when they (1) worked beyond their scheduled shift in order to complete a sale or (2) had to come back to work on their day off when a customer came to take delivery of the unit they sold. If a customer came to take delivery

of the unit they sold and they were on a meal or rest break, their breaks would be cut short without any corresponding premium pay.

Defendant timely filed answers to both complaints that generally and specifically denied Woodings' claims of wrongdoing as alleged, while asserting all applicable affirmative defenses, including a defense that Woodings' claims were subject to binding arbitration, and continues to deny, each and every material allegation, dispute, and claim raised in the underlying actions. Defendant has at all times denied, and continues to deny, all of these allegations, and denies any and all liability for Plaintiffs' claims. Defendant further denies that Plaintiffs' allegations are appropriate for class, and/or representative treatment for any purpose other than for settlement purposes only.

On August 6, 2020, the Class Action was removed to the United States District Court, Central District of California, Case No.: 2:20-cv-07072-FMo (JEMx). On August 27, 2020, the Named Plaintiffs amended their complaint to add Plaintiff Dormaier, the Washington subclass, while alleging the same causes of actions referenced above and the following additional actions (1) Violation of Wash. Rev. Code § 49.46.090 (Failure to Pay Minimum Wage); (2) § 49.46.130 (Failure to Pay Overtime); (3) § 49.12.020 (Failure to Provide Meal Breaks); (4) § 49.12.020 (Failure to Provide Rest Breaks); (5) § 49.48.010 (Payment of Wages Upon Termination); (6) § 49.52.050 (Willful Exemplary Damages); (7) Fraud; (8) Negligent Misrepresentation; (9) Breach of Contract; and (10) Accounting (hereinafter, "Class Complaint"). On or about July 20, 2021, Plaintiffs filed a Second Amended Complaint consolidating the PAGA Complaint and Class Complaint into one Operative Complaint for purposes of this Settlement. The Second Amended Complaint and all allegations and causes of action were deemed denied by Defendant, and Defendant was not required to file an Answer or any other responsive pleading to the Second Amended Complaint. The Second Amended Complaint related back to Plaintiffs original complaint filed on June 25, 2020 with regards to all applicable claims, pursuant to Federal Rule of Civil Procedure 15(c). Similarly, the Second Amended Complaint related back to Plaintiff's PAGA complaint filed on May 28, 2020 with regards to all

3

PAGA claims.

**B.   Settlement.**

On or about September 10, 2020, in an effort to resolve Plaintiffs' claims and to keep litigation costs to a minimum, the Parties agreed to attend mediation and to engage in an informal exchange of documents, and stipulated that Defendant would not file a Motion to Compel Arbitration or any other Rule 12(b) motion in response to Names Plaintiffs' Class Complaint. Instead, the Parties agreed Defendant would file an Answer asserting all appropriate defenses, including referencing the Parties' agreement to preserve all of Defendant's defenses and rights in advance of mediation. The Parties entered into a joint stipulation memorializing the above-mentioned agreement ("Stipulation"), which was filed September 30, 2020 (Dkt. No. 14).

The Parties engaged in informal discovery and exchange of information based on electronic time and pay records for putative class members and documents in the Lawsuits about *inter alia:* the number of current and former putative class members who worked during the relevant time period; the total number of workweeks at issue; the average hourly rate for the putative classes and aggrieved employees; Defendant's timekeeping, meal period and rest break policies; documents evidencing Defendant's handbooks, policies and procedures for managing payment for all hours worked, meal periods and rest breaks; and Named Plaintiff's personnel and payroll file.

On January 18, 2021, after engaging in informal discovery, the Parties attended a full mediation session with Eve Wagner, an experienced wage and hour class action and PAGA-action mediator. On the day of the mediation, after an 11-hour day of arms-length negotiations, the Parties reached an agreement by way of a mediator's proposal.

The Parties accepted the mediator's proposal, reaching agreement on the terms of a class- and PAGA-wide settlement that, once approved by the Court, shall resolve the Lawsuits in their entirety, and shall settle all claims running through preliminary approval. The Parties intend this Settlement Agreement to bind all Settlement Plaintiffs, which necessarily include Named Plaintiffs and Settlement Class Members.

Under the terms of the Settlement, Defendant shall pay a Maximum Gross Settlement Amount of Three Million Nine Hundred Fifty Thousand Dollars and Zero Cents ($3,950,000.00).  All funds remaining after deduction of the Payment to the Settlement Plaintiffs, the PAGA Payment ($900,000, or 25% of the Maximum Gross Settlement), Service Awards ($15,000 each), Attorneys' Fees ($1,382,500.00), Costs (not to exceed $15,000.00), and Settlement Administration Costs ($11,000.00) resulting in an estimated net settlement amount of $1,611,500.00 ("Net Settlement Amount"), which shall be automatically paid out to all Settlement Class Members who do not opt out, without them having to submit a claim form.   Szeto Decl., Ex. 1 at ¶ 4.

If the Court approves all of the requested allocations and deductions, the Class Net Settlement Amount of $1,611,500.00 shall be distributed to Settlement Class Members on a pro-rata basis based on the percentage of workweeks at issue between two distinct classes: the "California Class" which means all current and former hourly-paid or non-exempt employees employed by Defendant within the State of California at any time during the Settlement Period, and the "Washington Class," which means all current and former hourly-paid or non-exempt employees employed by Defendant within the State of Washington at any time during the Settlement Period.  Based on the workweeks between these classes, approximately 75% of the Class Net Settlement amount will be allocated to the California Class and 25% to the Washington Class.  Szeto Decl., Ex. 1 at ¶ 4.5.

## III.  **LEGAL ANALYSIS.**

### A.  **Legal Standard for Preliminary Approval of Class Action Settlements.**

Fed. R. Civ. P. 23(e) requires that a court engage in a two-step process when considering whether to approve the settlement of a class action.  First, it must make a preliminary determination whether the proposed settlement "is fundamentally fair, adequate, and reasonable." *Acosta v. Trans Union*, 243 F.R.D. 377, 386 (C.D. Cal. 2007). At this stage, "the settlement need only be potentially fair." *Id.*  In the second step of the process -- which occurs after preliminary approval, notification to class members and the compilation of information as to any objections by class members -- a court determines

whether final approval of the settlement should be granted.

A court is to consider and evaluate several factors as part of its assessment of the appropriateness of a proposed settlement.  The Ninth Circuit has identified the following non-exclusive ones that may be considered during both the preliminary and final approval processes:

> 1) the strength of the plaintiff's case;
> 2) the risk, expense, complexity and likely duration of further litigation;
> 3) the risk of obtaining and maintaining class action status throughout the trial;
> 4) the amount offered in settlement;
> 5) the extent of discovery completed and the stage of the proceedings;
> 6) the experience and view of counsel;
> 7) the presence of a governmental participant; and
> 8) the reaction of the class members to the proposed settlement.

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998).  Each of these factors does not necessarily apply to every class action settlement. Further, other factors may apply in evaluating a proposed settlement in a particular case. For example, courts often consider whether the settlement is the product of arm's length negotiations. See *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution").

**1.** <u>The Strength of the Case and Associated Risks Favor Preliminary Approval of the Settlement.</u>

Plaintiffs' Counsel continues to believe that the Class has a reasonable likelihood of certification and prevailing at trial on those claims.  Nevertheless, Plaintiffs' Counsel recognizes the risk of not obtaining certification and with the case proceeding on an individual basis.  And, a settlement of this considerable monetary amount is preferable to the multi-tiered risks associated with proceeding with trial and a likely appeal, and is in the class members' best interests.  Were Plaintiffs to succeed in prevailing at certification and a class-action jury trial, the resulting money judgment would likely be subject to many rounds of appeals, where, again, both sides would face considerable risk – for Plaintiffs, their hard-fought jury verdict could be overturned, as could a favorable ruling

6

for the defense.  In addition, money judgments must be bonded, and interest accrues during the pendency of appeal.  The Class still would not have yet received any money during the appeal process, and Plaintiffs' Counsel could have to spend years defending the judgment in possibly several rounds of appeal.

While there are considerable risks associated with a class action trial and resulting appeals, Plaintiffs' Counsel has taken class action cases all the way to the jury trial phase, and stood (and stand) ready and willing to do so again in this case.  Szeto Decl., ¶¶ 7–8.  That said, when presented with a settlement that will benefit the entire class in the very near future, the risk of later potentially recovering nothing, many years later, must be candidly recognized and evaluated.  For those reasons, Plaintiffs' Counsel is confident this proposed settlement is in the best interest of the Class.  *Id.*

**2.**     The Settlement Resulted from Arm's Length Negotiations Based Upon Investigation and Discovery.

During the mediation, the parties exchanged information and discussed all aspects of the case including the risks and delays of further litigation, the risks to both parties, the evidence produced and analyzed, and the possibility of a trial and resulting appeals, among other things.   During all settlement discussions, the parties conducted their negotiations at arms' length in an adversarial posture.  Szeto Decl., ¶ 3.  Arriving at a settlement that was acceptable to both parties was not easy and took approximately eleven (11) hours of arms-length negotiations and a mediator's proposal to reach resolution.  Defendant felt very strongly about its ability to prevail on certification and the merits at trial, and Plaintiffs' Counsel strongly believed the opposite.

**3.**     The Settlement Amount is Fair, Reasonable, and Adequate.

Plaintiffs alleged Defendant engaged in several practices designed to manipulate and lower the "Gross Profit" used to calculate the amount of sales commission it was required to pay Plaintiffs and the putative class members per their written compensation agreements.   From the handful of deals for which Plaintiffs were able to obtain information, Plaintiffs believe that conservatively they were shorted 50% to 75% of their

7

earned commission on each and every deal they sold.  For example, Defendant paid Plaintiff Woodings a total of $39,433.23 in commissions during her employment.  Based on those assumptions, potential class-wide damages were estimated at up to $23,482,488.50.

Because the 20% sales commission is established by written contract and therefore a nondiscretionary bonus, Plaintiffs allege it should have been included in each employee's regular rate of pay for purposes of calculating overtime.  California requires employers to pay overtime compensation for "at the rate of no less than one and one-half times the *regular rate of pay* for an employee."  Lab. Code, § 510, subd. (a), italics added.  Because California does not specifically address what makes up an employee's "regular rate of pay," *see Marin v. Costco Wholesale Corp.* (2008) 169 Cal.App.4th 804, 815, courts look to the FLSA for guidance. *Zator v. Sprint/United Management Co.* (S.D.Cal. Mar. 29, 2011, No 09-cv-0935-LAB(MDD)) 2011 WL 1157527, at *3.

An employee's regular rate of pay "include[s] *all* remuneration for employment paid to, or on behalf of, the employee," subject to certain enumerated exceptions.  (29 U.S.C. § 207(e), italics added.)  One of these exceptions excludes:

> [s]ums paid in recognition of services performed during a given period if . . . both the fact that payment is to be made and the amount of the payment are determined at the sole discretion of the employer at or near the end of the period and not pursuant to any prior contract, agreement, or promise causing the employee to expect such payments regularly . . . .

*Id.*, § 207(e)(3)(a).  This section permits an employer to exclude from an employee's regular rate of pay a "discretionary bonus," but not a "promised" one.   29 C.F.R. § 778.211 (c); *see also Faulkinbury v. Boyd & Associates, Inc.* (2013) 216 Cal.App.4th 220, 239 ("Bonuses based on incentive must be calculated into the employee's wages to determine the 'regular rate of pay.'")

In addition to the regular rate issue, Plaintiffs' allege they experienced late, short, and missed meal and rest breaks as a result of the pressures to make a sale.  For example, if Plaintiffs were with a customer when their breaks were supposed to begin, they would

8

have no choice but to take them late or miss them altogether because customers come first. If they were able to take a break, their breaks would often be interrupted if a customer came in to take delivery of a unit they had sold to them. Defendant is required to ensure employees are provided with breaks, and Defendant did not pay premium pay for these violations. *Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1018; Wash. Rev. Code §§ 49.12.020 and 49.12.020

In similar fashion, Plaintiffs allege Defendant failed to pay them for all hours worked when they (1) worked beyond their scheduled shift in order to complete a sale or (2) had to come back to work on their day off when a customer came to take delivery of the unit they sold. Defendant required and knew about such work, and Defendant stood idly by without paying them for it. *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014); Wash. Rev. Code §§ 49.46.090 and 49.46.130.

Plaintiffs also allege several theories for violative wage statements under Labor Code Section 226. First, they alleged the wage statements necessarily fail to accurately report "the total hours worked by the employee" because they do not include when they (1) worked beyond their scheduled shift in order to complete a sale or (2) had to come back to work on their day off when a customer came to take delivery of the unit they sold. Second, because Defendant failed to pay the employees for the minimum wage, overtime, and meal and rest break premiums discussed above, those unpaid wages are missing, causing the employees' wage statements to be inaccurate. Third, Defendant failed to include the accurate overtime rate by failing to factor the sales commission into the regular rate of pay. Accordingly, Defendant is liable for wage statement penalties of up to $4,000 per employee. Lab. Code § 226.

Plaintiffs also brought claims under California Labor Code sections 201 and 202 and Washington Rev. Code § 49.48.010, which require employers to pay earned wages immediately at the time of discharge. According to Plaintiffs, unpaid overtime pay and unpaid meal and rest premiums count as wages not timely paid upon an employee's departure. *See Murphy v. Kenneth Cole Productions, Inc.*, 40 Cal.4th 1094, 1113–1114

9

(2007); *see also Ghory v. Al-Lahham* 209 Cal.App.3d 1487, 1490–92 (1989). This merits the application of waiting-time penalties, which are calculated as one day's wage at the standard hourly rate multiplied by each day the employer fails to timely pay the outstanding wages, up to 30 days. Lab. Code, § 203. Here, waiting time penalties are owed because Defendant did not timely pay wages for the unpaid work, meal and rest break premiums, and wage statement penalties.

Plaintiffs additionally brought claims under California Labor Code section 1174, which requires employers to keep payroll records showing the hours worked daily by and the wages paid to, and the number of piece-rate units earned by and any applicable piece rate paid to, employees employed at the respective plants or establishments. As Plaintiffs allege, Defendant intentionally and willfully failed to keep accurate and complete payroll records, including but not limited to, failing to keep, at a central location in the State of California or at the plants or establishments at which employees are employed, payroll records showing the hours worked daily by and the wages paid to, or the number of piece rate units earned by or any applicable piece rate paid to, employees employed at the respective plants or establishments. As explained above, Defendant's payroll records are inaccurate and incomplete because they fail to include accurate pay for all hours worked and premium pay.

Under the California-specific PAGA cause of action, the initial violation is a $100 penalty per employee per pay period, and every subsequent violation is $200.00. Lab. Code § 2699.5, subd. (f)(2). However, courts have wide discretion to limit and reduce PAGA penalties where they are considered confiscatory or unjust. *Kileigh Carrington v. Starbucks Corporation, et al.*, San Diego Superior Court Case No. 37-2014-00018637-CU-OE-CTL (Apr. 3, 2017) (holding that the plaintiff was only entitled to collect the reduced penalty amount of $5.00 for each pay period).

As for the specific non-Labor Code causes of action, i.e., fraud, negligent misrepresentation, breach of contract, accounting, and the Unfair Competition Laws, these claims are largely premised on the same kinds of actual damages and injuries

Plaintiffs sought to recover for the non-payment of wages, i.e., monetary damages that would likely only add nominal value on top of the relief provided by the Labor Code.

Plaintiffs' counsel was provided the number of class members and PAGA releasees (approximately 1,322) and the estimated maximum number of workweeks to calculate a range of damages[3]. Using this data, Plaintiffs' counsel estimated Defendant's maximum class exposure at $25,059,393.90, and its PAGA exposure at $4,755,800 per initial violation of each predicate Code section for a total of $29,815,193.90.  Szeto Decl., ¶ 5. Thus, the total $3,950,000.00 Settlement is approximately 13% of the potential maximum recovery.  This equates to an average of approximately $2,987.90 per Settlement Class Member before deducting for attorneys' fees, costs, and taxes ($3,950,000 / 1,322).  Even at the final approval stage, "[a]n allocation formula need only have a reasonable, rational basis [to warrant approval], particularly if recommended by experienced and competent class counsel."  *In re American Bank Note Holographies, Inc., Securities Litigation* (S.D.N.Y. 2001) 127 F.Supp.2d 418, 429–30.

Given the uncertain outcomes, that liability is a contested issue, and that the full amount of damages would not necessarily be assessed, the settlement is within the "ballpark of reasonableness" and represents an excellent resolution of this case.  Szeto Decl., ¶¶ 5–7.  The proposed Settlement was calculated using information and data uncovered through discovery, case investigation and the exchange of information.  *Id*. The proposed Settlement takes into account the potential risks and rewards inherent in any case and in particular with this case.  *Id*.  Considering all of the facts, the Settlement amount represents a substantial global recovery for all Settlement Class Members.

While there are considerable risks associated with a class and PAGA trial and resulting appeals, Plaintiffs' Counsel has taken cases all the way to trial, and stood (and

---

[3] These numbers were reached based on time and payroll data that was current up to June 1, 2021. The Parties are presently in the process of acquiring updated workweek and pay period calculations that will have calculations current to the present. The Parties do not anticipate the updated pay and time data will substantively affect the above-mentioned calculations.

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

stand) ready and willing to do so in this case. That said, when presented with a settlement that will benefit all Settlement Class Members in the very near future, the risk of later potentially recovering nothing, many years later, must be candidly recognized and evaluated. For those reasons, Plaintiffs' Counsel is confident this proposed settlement is in the best interests of the Settlement Class Members.

Defendant maintains several defenses to Plaintiffs' theory of liability, which if successfully argued and proven, has the potential to eliminate or substantially reduce recovery. Szeto Decl., ¶ 7. Throughout this litigation, Defendant maintained, and continues to maintain, that it had, and continues to have, legally compliant employment policies and practices. *Id*. Defendant denies that it ever violated any provision of the California or Washington employment laws at issue. *Id*. Defendant further denied, and continues to deny, the lawsuit is appropriate for representative treatment for any purpose other than settlement. *Id*. While Plaintiffs maintains that this action is meritorious, Plaintiffs acknowledge their position includes real risks and uncertainties, especially in the face of Defendant's defenses. While Plaintiffs maintains they would overcome these defenses, Plaintiffs nonetheless faced several challenges in prevailing in this matter, and this factor supports approval of the Settlement.

Had this case not settled, the Parties would have conducted additional extensive formal discovery, including additional written discovery, expert discovery, and multiple depositions of witnesses up and down California and Washington to prepare the case for trial. Szeto Decl., ¶ 7. Even if Defendant failed on its defenses, litigating a complex class that involves both California and Washington wage and hour laws, and PAGA action is inherently expensive, and the litigation could continue beyond entry of judgment if either party were to appeal adverse rulings. Additionally, there is a real possibility that Plaintiffs would recover nothing, either for themselves or any of the Settlement Class Members, after years of costly and labor-intensive litigation. Avoiding these risks and the likelihood of future contentious litigation, which would involve significant costs, favors settlement.

/ / / /

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

**B.     The Proposed Settlement Classes Satisfy the Elements for Class Certification.**

The Parties also may, at the preliminary approval stage, request that the court provisionally approve certification of the class—conditional upon final approval of the settlement. Settlements are highly favored, particularly in class actions. *Util. Reform Project v. Bonneville Power Admin.*, 869 F.2d 437, 443 (9th Cir. 1989); *Officers for Justice*, 688 F.2d at 625. Plaintiffs request such provisional approval:

> The strength of the findings made by a judge at a preliminary hearing or conference concerning a tentative settlement proposal . . . . may be set out in conditional orders granting tentative approval to the various items submitted to the court. Three basic rulings are often conditionally entered at this preliminary hearing. These conditional rulings may approve a temporary settlement class, the proposed settlement, and the class counsel's application for fees and expenses.

4 Newberg on Class Actions at § 11.26.

The Parties stipulated to certification of the California Class and Washington Classes solely for the purpose of this settlement.  Szeto Decl., Ex. 1 at ¶ 4.11.

**1.     Numerosity**

The numerosity requirement is satisfied if the proposed class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Impracticable does not mean impossible, only that it would be difficult or inconvenient to join all members of the class. *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964). As of the Date of Preliminary Approval, the combined classes will consist of approximately 1,322 individuals.  Szeto Decl., ¶ 5.  Accordingly, the Classes are sufficiently numerous and clearly satisfies the numerosity prong.

**2.     Ascertainability.**

As stated above, Defendants have already ascertained the Class through Defendant's payroll records and was readily able to ascertain each employee's respective workweeks.  Szeto Decl., Ex 1 at ¶ 2.50

13

### 3.   Typicality.

Typicality under Rule 23(a)(3) is satisfied if the representative plaintiff's claims share a common element with the class: i.e., those claims arise from the same course of conduct that gave rise to the claims of other settlement class members. *In re United Energy Corp. Solar Power Modules Tax Shelter Invs. Sec. Litig.*, 122 F.R.D. 251, 256 (C.D. Cal. 1988).  Here, Plaintiffs were both employed as non-exempt hourly employees at Defendant's dealership locations, just like the rest of the class members.  Plaintiffs submit they both suffered the same harm as the absent class members, including not being paid at the correct rate pursuant to the commission agreements, unpaid overtime, and unprovided meal and rest breaks due to the pressures to make sales.  Plaintiffs assert their claims are typical of the other class members because they arise from the same factual basis and are based on the same legal theory as those applicable to the other class members.

### 4.   Commonality.

Commonality relates to whether there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality is satisfied if there is one issue common to class members. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).  Here, the validity of Defendant's commission agreement and the corresponding effect on the class members' ability to take breaks is a common question across the class.  These types of claims are the "sort routinely, and properly, found suitable for class treatment." *Brinker*, at 1033.  "The theory of liability—that Defendant has a uniform policy and that that policy, measured against wage order requirements, allegedly violates the law—is by its nature a common question eminently suited for class treatment."  *Id.*; *see also In re Taco Bell Wage and Hour Actions*, No. 1:07cv1314 LJO DLB, 2012 WL 5932833, at *5 (E.D.Cal. 2012) ("Numerous courts within the Ninth Circuit have held that commonality exists where a defendant's policy allegedly violates the meal requirements of California law.").

/ / / /

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

1          5.      Adequacy.

2          Adequacy under Rule 23(a)(4) is satisfied if the named plaintiffs have no disabling

3    conflicts of interest with other members of the class and Class Counsel are competent and

4    well qualified to undertake the litigation. *Lerwill v. Inflight Motion Pictures, Inc.*, 582

5    F.2d 507, 512 (9th Cir. 1978). Plaintiffs submits that no conflict exists between Plaintiffs

6    and the Class because Plaintiffs allegedly has suffered the same alleged violations as all

7    Class Members and has the incentive to fairly represent all Class Members' claims.

8    Despite the settlement, Plaintiffs remain willing to vigorously prosecute this action to the

9    benefit of the class. Woodings Decl., ¶ 8; Dormaier Decl., ¶ 8. Furthermore, Plaintiffs

10   are represented by attorneys who have extensive experience in complex wage and hour

11   litigation as is detailed in their declarations supported herewith. Szeto Decl., Ex. 2.

12         6.      Common Question of Law and Fact Predominate

13         Plaintiffs contends that common questions of law or fact predominate over

14   individual questions pursuant to Rule 23(b)(3). These issues of fact and law raised in this

15   action are common to all members of the classes and predominate in this case. Here,

16   Plaintiffs contend the commission agreement and Defendant's practice of reducing the

17   "Gross Profit" is a common issue that predominates. Plaintiffs contend this reduction

18   occurred systematically and across all sales transactions, thereby depriving each class

19   member of wages. There are no individualized inquiries that would somehow bar

20   certification or recovery here. Instead, these theories of liability are "sufficiently cohesive

21   to warrant adjudication by representation." *Abdullah*, 731 F.3d at 964 (quoting *Wang v.*

22   *Chinese Daily News, Inc.*, 737 F.3d 538, 545 (9th Cir. 2013)). Notably, "the presence of

23   individualized damages cannot, by itself, defeat class certification under Rule 23(b) (3),"

24   especially in a wage-and-hour case. *Levya v. Medline Indus., Inc.* 716 F.3d 510, 514 (9th

25   Cir. 2013); *see also Wal-Mart*, 131 S.Ct. at 2558 ("[I]ndividualized monetary claims belong

26   in Rule 23(b)(3)"). "[D]amages determinations are individual in nearly all wage-and-hour

27   class actions," and therefore any rule precluding certification " 'on the issue of damages or

28   restitution may well be effectively to sound the death-knell of the class action device.' "

15

*Levya*, 716 F.3d at 513–14 (quoting *Brinker*, 53 Cal. 4th at 354).  As set forth above, courts grant certification of such claims. Based on discovery, Plaintiffs believe and asserts Defendant committed these violations to Plaintiffs in the same manner to all Class Members.

### 7.   Superiority of Class Action

Plaintiffs submit the requirement that a class action is superior to other methods of adjudication under Rule 23(b)(3) is also met. Courts have recognized that the class action device is superior to other available methods for the fair and efficient adjudication of controversies involving large number of employees in wage and hour disputes. *See*, e.g. *Hanlon*, 150 F.3d at 1022. Without class-wide relief in this action, the Class Members would be forced to litigate numerous cases on a piecemeal basis.

### C.   Legal Standard For Attorneys' Fees In A Class Action Settlement.

Class Counsel seeks approval of an attorneys' fee award equal to 35% of the total value of the settlement fund established by the settlement agreement.  An award of attorneys' fees as a percentage of a fund established by a settlement is well-established in Ninth Circuit jurisprudence; the Ninth Circuit's benchmark for such common fund awards is 25% of the common fund.  *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990); *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989); *In re Pacific Enterprises Security Litigation*, 47 F.3d 373, 379 (9th Cir. 1995); *In re Activision Securities Litigation*, 723 F. Supp. 1373, 1375 (N.D. Cal. 1989).

This "common fund" doctrine, under which attorneys who create a common fund or benefit for a group of persons may be awarded their fees and costs out of the fund, has long been a staple of class action settlements in federal courts generally: "a lawyer who recovers a common fund for the benefit of persons other than…his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S.

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT**

472, 478 (1980); *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375 (1970).[4]   Federal courts, and particularly the Ninth Circuit, have endorsed the percentage method as a fair way to calculate a reasonable fee when contingency fee litigation has produced a common fund. *See*, *e.g.*, *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) (under common fund doctrine, "reasonable fee is based on a percentage of the fund bestowed on the class"); *Six Mexican Workers*, 904 F.2d at 1311 (common fund fee is generally "calculated as a percentage of the recovery").

Courts have recognized that, in addition to providing just compensation, awards of fair attorneys' fees from a common fund should also serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future alleged misconduct of a similar nature.   *See*, *e.g.*, *Dolgow v. Anderson*, 43 F.R.D. 472, 481-84 (E.D.N.Y. 1968); *see also In re Interpublic Sec. Litig.*, No. Civ. 6527 (DLC), 2004 U.S. Dist. LEXIS 21429, at *30–31 (S.D.N.Y. Oct. 27, 2004) ("It is well established that where an attorney creates a common fund from which members of a class are compensated for a common injury, the attorneys who created the fund are entitled to 'a reasonable fee – set by the court – to be taken from the fund.'") (citation omitted).   The "[d]etermination of 'reasonableness' is within the discretion of the district court." *Id.* at *31.

The Ninth Circuit has made clear that when a fund is established which makes a pool of money available to a class of persons, the attorneys' fees for the plaintiffs' counsel are properly calculated as a percentage of the entire fund. *See Williams v. MGM-Pathe Communications*, 129 F.3d 1026, 1026–27 (9th Cir. 1997).   In *Boeing*, the Court concluded that the attorneys for a successful class may recover a fee based on the entire

---

[4]   The common fund doctrine rests on the understanding that attorneys should normally be paid by their clients, and that unless attorneys' fees are paid out of the common fund where the attorneys' unnamed class member "clients" have no express retainer agreement, those who benefited from the fund without contributing to those who created it would be unjustly enriched. *Boeing***Error! Bookmark not defined.**, 444 U.S. at 478.

17

common fund created for the class, even if some class members make no claims against the fund so that money remains in it that otherwise would be returned to the defendants. *Boeing*, 444 U.S. at 480–81; *see also Six Mexican Workers*, 904 F.2d at 1311; *Glass v. UBS Financial Services, Inc.*, 2007 WL 221862, *16 (N.D. Cal. Jan. 26, 2007); *Young v. Polo Retail, LLC*, 2007 WL 951821, *8 (N.D. Cal. 2007).

Substantial fee awards in successful cases, such as the present action, encourage and support meritorious class actions, and thereby promote private enforcement of, and compliance with federal laws.  The continued viability of wage-and-hour laws, like the viability of other remedial statutes, depends on the ability of private litigants to seek redress through litigation.  The success of these lawsuits depends in part on the availability and willingness of attorneys to bring them.  Substantial fee awards also encourage reputable law firms with skilled, capable attorneys to take the risk of serving as "private attorneys general."  Indeed, "[a]bsent an award of fees that adequately compensates Class Counsel, the entire purpose and function of class litigation under Rule 23 of the Federal Rules of Civil Procedure will be undermined and subverted to the interest of those lawyers who would prefer to take minor sums to serve their self-interest rather than obtaining real justice on behalf of their injured clients."  *Allapattah Services, Inc. v. Exxon Corp.*, 454 F.Supp. 2d 1185, 1217 (S.D.Fla. 2006).

**1**.    Upward Adjustment of the Ninth Circuit Benchmark is Appropriate.

Although the Ninth Circuit established 25% as a "benchmark" for attorneys' fee awards that are established out of a common fund, where, as here, circumstances merit it, "[t]hat percentage amount can then be adjusted upward or downward to account for any unusual circumstances involved in [the] case." *Paul*, 886 F.2d at 272.  Given the results achieved and the difficulties attendant in litigating this case, an upward adjustment is warranted.

In *Vizcaino*, the Ninth Circuit laid out the factors to be considered in adjusting a fee award from the "benchmark." *See Vizcaino*, 290 F.3d at 1047–1050.  These are: (i) the size of the fund (and thus the resulting size of the percentage fee award); the quality

18

of the results obtained by Plaintiffs' counsel; (ii) the risk taken on by Plaintiffs' counsel in accepting and pursuing the case with no guarantee of victory or being paid for their time and effort; (iii) incidental or non-monetary benefits conferred by the settlement; (iv) the effort expended by Plaintiffs' counsel; (v) and Plaintiffs' counsel's reasonable expectations based on the circumstances of the case and fee awards in other cases. *Id.* A consideration of the *Vizcaino* factors shows that Plaintiffs' Counsel's request for 35% the total value of the settlement is exceedingly reasonable.

### A.    *The Risks Assumed by Plaintiffs' Counsel.*

Plaintiffs' Counsel assumed a very real risk in taking on this case. Plaintiffs took on a national corporation with approximately a billion dollars in revenue and defended by a national law firm with far more resources than Plaintiffs' Counsel. Plaintiffs' Counsel took the case on a contingency basis, and invested time, effort, and money with no guarantee of recovery. In cases where the "recovery is far from certain," as here, an award of more than 25% of the common fund as attorneys' fees is appropriate. *In re Washington Public Power*, 19 F.3d at 1302; *see also Vizcaino*, 290 F.3d at 1048.

Plaintiffs' Counsel proceeded knowing there was a chance that Defendant would prevail and that even if Plaintiffs prevailed, there was a chance that the case would take years to bring to trial and would not be resolved without an appeal. The risk of no recovery in complex class actions of this type is very real. There are numerous cases where plaintiff's counsel in contingent-fee cases such as this one, after devoting thousands of hours and advancing significant sums in out-of-pocket expenditures, received no compensation whatsoever. *See, e.g.*, *Armstrong v. Whirlpool Corp.*, 2007 U.S. Dist. LEXIS 14635 (M.D. Tenn. 2007); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) ("The risk of maintaining class action status throughout the trial" was an important favor in approving the class action settlement.). From the outset Defendant has adamantly denied any liability and continues to do so today.

This was a complicated and uncertain case in which Defendant vehemently contested liability. The risks of the case and litigation obstacles were great, but Plaintiffs'

19

counsel, nevertheless, achieved an extremely successful result, and thus, this *Vizcaino* factor militates in favor of the fee award sought by Plaintiffs' counsel.

## B.    *Counsel Obtained an Excellent Result for the Classes.*

The result obtained by Plaintiffs' Counsel here is remarkable. Class Members who do not opt out will automatically receive an individual payout equating to roughly $2,987.90 per class member before deducting for attorneys' fees, costs, and taxes ($3,950,000 / 1,322 Class Members = $2,987.90). This is remarkable in light of the potential risks and with liability uncertain. As a result of the settlement, all of the Settlement Class Members will be provided with an automatic recovery. Thus, this *Vizcaino* factor greatly favors Plaintiff's Counsel's fee request.

The quality of opposing counsel is also important in evaluating the quality of Plaintiffs' Counsel's work.[5] Here, as set forth above, Defendant is represented by experienced and skilled lawyers from a national law firm with a deserved reputation for vigorous advocacy in the defense of complex employment class action cases. The ability of Plaintiffs' Counsel to obtain this Settlement in the face of such formidable legal opposition confirms the quality of Plaintiffs' Counsel's representation. Accordingly, this factor strongly supports the requested fee.

## C.    *Plaintiffs' Counsel's Award is Relatively Modest.*

Here, Plaintiffs' Counsel seeks 35% of the value of the settlement fund of $3,950,000.00. Most Ninth Circuit cases consider the size of the settlement fund for purposes of evaluating fee requests, in relation to how large it renders the resulting fee award. *See, e.g., In re Washington Public Power*, 19 F.3d at 1297 ("the percentage of an award generally decreases as the amount of the fund increases."). The fee request is less than the Net Settlement Amount that will be paid to the Class. Accordingly, the fee request here is in line with Ninth Circuit precedent.

---

[5]    *See In re KeySpan Corp. Sec. Litig.*, No. CV 2001-5852 (ARR) (MDG), 2005 U.S. Dist. LEXIS 29068, at *35 (E.D.N.Y. Aug. 25, 2005) ("The quality of opposing counsel is also important in evaluating the quality of Class Counsel's work.").

**D.**   *Counsel Obtained Swift and Efficient Relief for the Classes.*

While the *Vizcaino* court considered the protracted litigation in that case, it stressed:  "We do not mean to imply that class counsel should necessarily receive a lesser fee for settling a case quickly; in many instances, it may be a relevant circumstance that counsel achieved a timely result for class members in need of immediate relief." *Vizcaino*, 290 F.3d at 1050, n. 5.  In fact, the Court acknowledged that using time expended as a proxy for the effort expended on or success of a case "creates incentives for counsel to expend more hours than may be necessary on litigating a case so as to recover a reasonable fee," and that such an evaluation "does not reward early settlement." *Id.*  Here, Plaintiffs' Counsel achieved a substantial benefit for class members in a very timely fashion, providing class members with substantial and certain relief much sooner than if this matter had been extensively litigated.  There is no doubt that either side would have appealed the trial verdict.

Moreover, Plaintiffs' Counsel did not sacrifice due diligence in achieving an efficient resolution of this case.  As discussed above, Plaintiffs' Counsel sought and obtained discovery and substantial information about the Class Members to effectively and meaningfully negotiate and seek relief on their behalf.  Szeto Decl., ¶ 3–7.  In addition, Plaintiffs' Counsel spoke with numerous Class Members concerning their claims.  Hence, Plaintiffs' Counsel's request for fees is reasonable here.

**E.**   *The Skill and Reputation of Plaintiffs' Counsel Justifies the Fee Requested.*

As shown in the accompanying declaration, Plaintiffs' Counsel are recognized leaders in employment class actions, and put the full use of their skill and experience to work in the service of Plaintiffs and the Classes in this case.  Szeto Decl., Ex. 2.  As a result, these factors favor the fee award sought by Plaintiffs' Counsel. The Parris Law Firm has dedicated itself to this case.  Plaintiffs' Counsel are nationally-recognized trial and class-action attorneys and employed their knowledge, skill, and experience in bringing to conclusion a very favorable result in a unique, hard-fought litigation.  The

21

goal achieved is the extraordinary result of obtaining $3,950,000.00 for the Class. Counsel respectfully requests an award of attorneys' fees equal to 35% of that amount.

### C.    Costs to Be Reimbursed to Plaintiffs' Counsel.

By the time of the final approval hearing, Plaintiffs' Plaintiffs' Counsel will have incurred numerous litigation costs. Szeto Decl., ¶ 11. The costs incurred include the costs for filing the complaint, mediation costs with a reputable wage-and-hour class action mediator, as well as costs relating to court appearances. These expenses are reasonable and necessary in the prosecution of this class action. Accordingly, Plaintiffs' Counsel requests that the Court order reimbursement of the costs incurred by Plaintiffs' Counsel, not to exceed $15,000.00, for litigation costs and expenses.

### D.    The Proposed Notice is Adequate.

California statutory and case law vests the court with broad discretion in fashioning appropriate class notice. *See* CAL. CIV. CODE § 1781; *Cartt v. Superior Court* (1975) 50 Cal.App.3d 960, 973-74. The proposed Notice attached as **Exhibit "A"** to the Settlement Agreement provides information on the meaning and nature of the Settlement; the terms and provisions of the proposed Settlement, the relief the proposed Settlement will provide to the Class Members; Plaintiffs' Counsel's request for reimbursement of costs and attorneys' fees; the date, time, and place of the final settlement approval hearing; and the procedure and deadlines for participating and submitting objections to the proposed Settlement. The proposed Notice is consistent with class certification notices approved by numerous state and federal courts.

The proposed Notice also fulfills the requirement of neutrality in class notices. *Newberg*, at § 8.39. "Sufficient information about the case should be provided to enable class members to make an informed decision about their participation." *Manual for Complex Litigation* § 21.311 at p. 413 (4th ed. 2007). The proposed Notice summarizes the proceedings to date and the terms and conditions of the proposed Settlement in an informative and coherent manner. The proposed Notice is "accurate, objective, and understandable to class members . . . ." *Mendoza v. United States* (9th Cir. 1980) 623

22

F.2d 1338.  The proposed Notice recognizes that the Court has not yet granted final approval and apprises the Class Members of how to object to the proposed Settlement. The proposed Notice satisfies all due process requirements and comply with the standards of fairness, completeness, and neutrality.  FED. R. CIV. P. 23(c)(2) and 23(e); *Newberg*, at §§ 8.21, 8.39; *Manual*, at §§ 21.311, 21.312.

### E.   Appointing Simpluris, Inc. as the Third Party Administrator.

Plaintiffs' Counsel proposes the appointment of Simpluris, Inc. ("Simpluris"), an experienced, reputable third party administrator, as the Third Party Administrator ("TPA") to administer the proposed Settlement.  Neither party or its counsel owns or is affiliated with Simpluris.  Pursuant to the terms of the Settlement Agreement, the TPA will print and distribute the Notice to the Settlement Class by First Class mail; establish a mailing address and toll-free telephone number to receive Class Members' inquiries about the proposed Settlement; will receive, review, and process all objections to the proposed Settlement; will receive and process any written disputes and supporting documentation submitted by the Class Members as to their number of work weeks; will handle inquiries from Class Members regarding the proposed Settlement; will calculate each Class Members' individual share of the Net Settlement Amount; will mail the settlement checks to the Settlement Class Members; and will perform any other usual and customary duties for administering a class action settlement.  The TPA's fees and expenses shall be paid out of the Settlement Amount, not to exceed $11,000.00.

### F.   The Enhancement Award Is Fair and Reasonable.

Plaintiffs request that the Court approve an Enhancement Award in the total amount of $15,000.00 to Class Representatives Kamela Woodings and Jodi Dormaier for their efforts in filing and assisting in this class action lawsuit.  It is within the Court's discretion to award to the Class Representatives for their efforts and work.  *Vranken v. Atlantic Richfield Co*., 901 F.Supp. 294, 299 (N.D. Cal. 1995) (approving $50,000 participation award to a single class representative).  The criteria courts may consider in determining whether to make an incentive award include:  1) the risk to the representative in

23

commencing suit, both financial and otherwise; 2) the notoriety and personal difficulties encountered by the representative; 3) the amount of time and effort spent by the class representative; 4) the duration of the litigation; and 5) the personal benefit (or lack thereof) enjoyed by the representative as a result of the litigation. *Id*.

Enhancement payments to named plaintiffs are frequently awarded to recognize their time and efforts, and the risks they undertake on behalf of a class. Courts routinely award service payments, which are intended to advance public policy by encouraging individuals to come forward and perform their civic duty in protecting the rights of the class, as well as to compensate class representatives for their time, effort and inconvenience. *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001), *quoting In Re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997) ("Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation."). In the *Ingram* case, the Court approved incentive awards of $300,000 to each named plaintiff in recognition of the services they provided to the class by responding to discovery, participating in the mediation process and taking the risk of stepping forward on behalf of the class. *Id.* at 694; *see also Vranken*, 901 F. Supp. at 300 (approving $50,000 participation award for the representative Plaintiff).

Incentive awards are particularly appropriate where the "class representative[ ] remain[s] fully involved and expended considerable time and energy during the course of the litigation." *Razilov v. Nationwide Mut. Ins. Co.,* No. 01-CV-1466-BR, 2006 WL 3312024, at *4 (D. Or. Nov. 13, 2006). Plaintiffs spearheaded this lawsuit. They committed time to the litigation by reviewing pleadings, communicating with Class Counsel during the prosecution of this case, and gathering documents and other information pertaining to the sales at issue, warranting an enhancement award. Woodings Decl. at ¶¶ 5–7; Dormaier Decl. at ¶¶ 5–7.

The Enhancement Award is further justified because Plaintiffs have agreed to the full general release of their claims against Defendant, which is much broader than the

24

release that applies to the class.  Broad releases of the named plaintiff's claims that go beyond what is required of the class members are taken into account when considering the reasonableness of the incentive award.  *See Boring v. Bed Bath & Beyond of California Ltd. Liab. Co*., No. 12-CV-05259-JST, 2014 WL 2967474, at *3 (N.D. Cal. June 30, 2014); *Holman v. Experian Info. Solutions, Inc.*, No. 11-CV-0180 CW (DMR), 2014 WL 7186207, at *6 (N.D. Cal. Dec. 12, 2014) (finding that the class representative is entitled to an incentive award "for his service to the class and for his broad release of all claims, known or unknown, against [the defendant]"); *Eddings v. Health Net, Inc.*, No. CV 10-1744-JST RZX, 2013 WL 3013867, at *7 (C.D. Cal. June 13, 2013).

Notably, the award is also well within the acceptable range awarded in similar cases.  *See, e .g., Van Vranken v. Atlantic Richfield*, 901 F. Supp. 294, 300 (N.D. Cal. 1995) ($50,000 to each named plaintiff was fair and reasonable); *Singer v. Becton Dickinson and Co.*, 08-cv-821-IEG (BLM), 2010 WL 2196104, at *9 (S.D. Cal. June 1, 2010) (award of $25,000 reasonable); *Smith v. CRST Van Expedited, Inc.,* No. 10-CV-1116- IEG WMC, 2013 WL 163293, at *6 (S.D. Cal. Jan. 14, 2013) ($15,000); *Brotherton v. Cleveland*, 141 F.Supp.2d 907, 913–14 (S.D.Ohio 2001) ($50,000).  Without the effort of Plaintiffs, this case would not have been filed and a class-wide settlement would not have been achieved.  The proposed $15,000 Enhancement Award to each Plaintiff is therefore appropriate and justified as part of the overall settlement.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant preliminary approval of the proposed Settlement in accordance with the above and the Parties' Settlement Agreement.

/ / / /

/ / / /

/ / / /

/ / / /

/ / / /

DATED:  July 26, 2021      **PARRIS LAW FIRM**

By:  /s/ *Kitty K. Szeto*
     R. Rex Parris, Esq.
     Kitty M. Szeto, Esq.
     John M. Bickford, Esq.

     Attorneys for Plaintiffs,
     KAMELA WOODINGS and
     JODI DORMAIER

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing document with the Clerk of the Court for the United States District Court, Central District of California, by using the Court's CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the Court's CM/ECF system.


Dated: July 26 2021                                    /s/ *Kitty K. Szeto*

27